NO. 07-07-0322-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 25, 2008
______________________________

DAVIE HARRISON SR., APPELLANT

V.

WILLARD KIPER, ET AL., APPELLEES
_________________________________

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 34404; HONORABLE LEE WATERS, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Davie Harrison, Sr., appeals from an order dismissing his pro se, in forma
pauperis suit under Chapter 14 of the Texas Civil Practice and Remedies Code. We
affirm.
Â Â Â Â Â Â Â Â Â Â Harrison is an inmate at the Jordan Unit of the Texas Department of Criminal
Justice, Institutional Division (hereafter, âTDCJ-IDâ). On July 25, 2006, Harrison filed a
âCriminal Information/Complaintâ against Chaplain Willard Kiper, Grievance Investigator
Glen Stouder, Assistant Warden L. Ellis, Volunteer Mike Riley, and other unnamed TDCJ-ID employees for their alleged criminal abuse of official capacity under Texas Penal Code
sections 39.02, 39.04, and 39.06. Subsequently, on August 15, 2006, Harrison filed an
âAmended Criminal Complaintâ that added a claim that the defendants were employing
false and deceptive business practices to obtain property in violation of Texas Penal Code
sections 32.32 and 32.42(b)(12). At the same time as the âAmended Criminal Complaintâ
was filed, Harrison also filed a hand-written âAmended Criminal Complaintâ that alleged
that âCaptain Andisâ made a terroristic threat against Harrison. On April 13, 2007, Harrison
filed a motion to amend his previous filings to include claims against âOfficer Willis,â
âOfficer Richardson Jr.,â âAssistant Warden Whitfield,â Karl Parks, Lawana Richardson,
Jane M. Cockerham, and Tammera Powers, each in their individual and official capacities,
for physical injuries, mental anguish, and emotional distress he sustained as a result of
defendantâs use of restraints. Harrison also sought leave to amend his filing to add claims
against Texas Tech University Health Science Center and Dr. D. Patel for medical
negligence. On May 22, 2007, Harrison filed a document titled âClaims for Reliefâ which
seeks declarations that each of Harrisonâs claims filed under the present cause number
were true, injunctions ordering that Harrison be provided specialized medical treatment and
be transferred to a minimum security medical unit in a different region, compensatory
damages of $250,000, and punitive damages of $200,000. Additionally, Harrison filed
multiple motions and complaints under the present cause. The defendants jointly filed a
Motion to Dismiss Harrisonâs suit for failure to comply with Chapter 14 of the Texas Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 14.002 (Vernon
2002).


 Without a hearing, the trial court ordered the lawsuit âdismissed due to Plaintiffâs
violation of Chapter Fourteen of the Texas Civil Practice and Remedies Code.â On July
11, 2007, Harrison filed a Motion for New Trial, which claimed, inter alia, that he had
discovered the existence of x-rays of his claimed injuries after the trial court had dismissed
his suit. Within his motion for new trial, Harrison requested the trial court make findings
of fact and conclusions of law. It appears that Harrisonâs motion was overruled by
operation of law. See Tex. R. Civ. P. 329b(c).
Â Â Â Â Â Â Â Â Â Â Through ten issues, Harrison challenges the dismissal of the lawsuit for failure to
comply with the requirements of Chapter 14, the trial courtâs failure to consider Harrisonâs
newly discovered evidence, and the trial courtâs failure to issue findings of fact and
conclusions of law. We affirm the trial courtâs order of dismissal.
Dismissal
Â Â Â Â Â Â Â Â Â Â Inmate litigation, except for suits brought under the Family Code, in which the
inmate files an affidavit or unsworn declaration of inability to pay costs is governed by
special procedural rules set forth in Chapter 14. The trial court has broad discretion to
dismiss a lawsuit brought under Chapter 14 as frivolous or malicious. See Â§ 14.003(a)(2). 
One factor that the trial court may consider in determining if an inmateâs claim is frivolous
or malicious is whether the claim is substantially similar to a previous claim filed by the
inmate because the claim arises from the same operative facts. Â§ 14.003(b)(4). To allow
the trial court to assess whether the inmateâs claim arises from the same operative facts
as a previous claim, the inmate must file an affidavit or unsworn declaration identifying,
with specificity, each pro se suit that the inmate has previously brought. See Â§ 14.004. 
When an inmate fails to provide the information required by section 14.004(a)(2), the trial
court is entitled to assume the current suit is substantially similar to a previous claim. 
Samuels v. Strain, 11 S.W.3d 404, 406 (Tex.App.âHouston [1st Dist.] 2000, no pet.); Bell
v. Texas Depât of Crim. JusticeâInstitutional Div., 962 S.W.2d 156, 158 (Tex.App.âHouston
[14th Dist.] 1998, pet. denied).
Â Â Â Â Â Â Â Â Â Â We review a trial courtâs dismissal of a lawsuit brought by an inmate who has filed
an affidavit or declaration of inability to pay costs for abuse of discretion. Thomas v.
Knight, 52 S.W.3d 292, 294 (Tex.App.âCorpus Christi 2001, pet. denied). A trial court
abuses its discretion when it acts arbitrarily or unreasonably in light of all of the
circumstances in the case or, stated another way, when the trial court acts without
reference to any guiding rules and principles. Id. 
Â Â Â Â Â Â Â Â Â Â In the present case, the trial court dismissed Harrisonâs suit due to âPlaintiffâs
violation of Chapter Fourteen of the Texas Civil Practice and Remedies Code.â In their
motion to dismiss, the defendants sought dismissal of Harrisonâs lawsuit on the basis of
his failure to comply with the affidavit or unsworn declaration of prior filings requirement of
section 14.004, his failure to timely file his suit within 31 days after receiving written notice
of decision from the grievance system under section 14.005(b), and because the claims
Harrison asserted in his suit were frivolous or malicious. Our review of the trial courtâs
dismissal of Harrisonâs suit will address only the sufficiency of Harrisonâs affidavit of
previous filings, as the insufficiency of this filing pretermits consideration of other bases for
the trial courtâs dismissal under Chapter 14.
Â Â Â Â Â Â Â Â Â Â Harrisonâs affidavit identifies that he had only filed two previous pro se suits that he
had a duty to disclose under section 14.004. Harrisonâs identification of a prior suit against
Northwest Texas Healthcare Systems indicates that he sought relief for gross negligence
under the Texas Medical Liability and Insurance Improvement Act. The other prior filing
identified by Harrison indicates that, at some time in 2003 or 2004, he filed a claim against
âagents and servant[s]â of the TDCJ-ID for âassault and battery negligence by a TDCJ
correctional officer at the Bill Clements unit . . . .â Neither of these identifications state the
operative facts for which relief was sought, rather, they state only the legal theory upon
which relief was sought. Based on the information contained in his affidavit, it was
impossible for the trial court to determine whether the claims alleged in Harrisonâs current
suit were duplicative of his earlier filings.


 Because the trial court was unable to determine
if Harrisonâs present suit was substantially similar to previous suits filed by Harrison, the
trial court was entitled to assume the current suit is substantially similar to those prior filings
and, therefore, is frivolous or malicious. See Samuels, 11 S.W.3d at 406; Bell, 962 S.W.2d
at 158. Thus, the trial court did not abuse its discretion by dismissing Harrisonâs suit. See
Thomas, 52 S.W.3d at 295. 
Â Â Â Â Â Â Â Â Â Â We further conclude that the fact that Harrisonâs affidavit indicated that his prior
filings were asserted against different defendants is of no import. The trial court was
justified to assume that Harrison may have filed separate lawsuits against different
defendants arising from the same operative facts. See White v. State, 37 S.W.3d 562, 565
(Tex.App.âBeaumont 2001, no pet.). Since the trial court can dismiss a claim as frivolous
or malicious if it is substantially similar to a previous claim filed by the same inmate
because the claim arises from the same operative facts, see Â§ 14.003(b)(4), we affirm the
trial courtâs judgment.
Post-Judgment Filings
Â Â Â Â Â Â Â Â Â Â We note that Harrisonâs Motion for New Trial did not amend or supplement his
affidavit of previous filings and, thus, the trial court did not abuse its discretion in denying
same. As for Harrisonâs request for findings of fact and conclusions of law, the record does
not reflect that Harrison filed a Notice of Past Due Findings of Fact and Conclusions of
Law, as required by Rule 297 of the Texas Rules of Civil Procedure.
Conclusion
Â Â Â Â Â Â Â Â Â Â For the foregoing reasons, we affirm the trial courtâs order of dismissal.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Mackey K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice








ight:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0032.cr\(2\)%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0032.cr\(2\)%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0032.cr\(2\)%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0032.cr\(2\)%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0032.cr\(2\)%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00032-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL A

Â 



JULY
19, 2011

Â 



Â 

ARSENIO PETTY, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 16TH DISTRICT COURT OF
DENTON COUNTY;

Â 

NO. F-2009-0413-A; HONORABLE CARMEN RIVERA-WORLEY, JUDGE



Â 



Â 

Before CAMPBELL, and HANCOCK and PIRTLE, JJ.

Â 

Â 

OPINION

Â Â Â Â Â Â Â Â Â Â Â  Appellant, Arsenio Petty, appeals
from a conviction for capital murder.[1]Â  The State did not did not seek the death
penalty, therefore, appellant was automatically sentenced to incarceration for
life in the Institutional Division of the Texas Department of Criminal Justice
without the possibility of parole.[2]Â  Appellant appeals contending that the trial
court committed reversible error in admitting his videotaped confession, and in
admitting StateÂs exhibit 58, a picture drawn by one of appellantÂs
victims.Â  Further, appellant contends
that the automatic life sentence mandated by statute is unconstitutional under
both the United States Constitution and the Texas Constitution.Â  We affirm.

Factual and Procedural Background

Â Â Â Â Â Â Â Â Â Â Â  Appellant
does not object to the sufficiency of the evidence to sustain the juryÂs
verdict.Â  Therefore, only that portion of
the factual and procedural background that is relevant to appellantÂs contentions
on appeal will be discussed.

Â Â Â Â Â Â Â Â Â Â Â  On
December 30, 2008, appellant and at least two other men entered a convenience
store, The Gas Pipe, in Carrollton, Texas.Â 
A surveillance camera reflects that, as the first two men enter the
store, appellant reaches and takes a handgun from Maurice Hall and begins
shooting at the employees and patrons in the store.Â  In the ensuing melee, appellant shot and
struck Rebecca Kemp in the upper left chest.Â 
Kemp died as a result of this wound.Â 
All of the assailants, including appellant, fled the store after the
shooting.Â  No money was obtained in the
robbery.Â  

Â Â Â Â Â Â Â Â Â Â Â  Having
no clear leads or suspects in the shooting, the police released the
surveillance videotape to local media outlets.Â 
As a result of the video being played on local television stations,
information was furnished to the police identifying appellant as the individual
doing the shooting in the video.Â  Upon
further investigation, the police interviewed appellantÂs sister, Shadara
Perry, who told the police that appellant had told her he thought he had shot
somebody during the robbery shown on television.Â  

Â Â Â Â Â Â Â Â Â Â Â  Appellant
was subsequently arrested and, after his arrest, he gave a videotaped statement
to the police confessing to his actions in the shooting.Â Â Â  Appellant filed a pre-trial motion to
suppress the confession.Â  After viewing
that portion of the statement that was at issue, the trial court overruled the
motion to suppress.Â  During the trial,
the videotape in question was introduced into evidence as StateÂs exhibit 54
and played for the jury.

Â Â Â Â Â Â Â Â Â Â Â  During
the trial of appellant, a number of witnesses were called to testify that
appellant had either told them of his participation in the robbery/murder, or
about observing appellantÂs reaction when the television news had played the
surveillance video of the event.Â  The
State also introduced StateÂs exhibit 58 during the testimony of Holly
Arceneaux.Â  Arceneaux was in The Gas Pipe
convenience store at the time of the shootings.Â 
As part of her personal therapy, she had drawn a picture of the
incident.Â  The State offered ArceneauxÂs
drawing.Â  Appellant objected to the
introduction of the picture on the basis of relevance, prejudice, and best
evidence.Â  The trial court overruled the
objections and allowed the picture to be introduced before the jury.Â  Upon submission of the case to the jury, the
jury found appellant guilty of the offense of capital murder.Â  Because the State had waived the death penalty,
appellant was automatically sentenced to confinement for life without the
possibility of parole.

Â Â Â Â Â Â Â Â Â Â Â  Appellant
filed a motion for new trial, which was denied by the trial court.Â  Subsequently, appellant requested the trial
court file findings of fact and conclusions of law regarding the admission of
the videotaped confession.Â  Because these
findings and conclusions were not included in the original ClerkÂs Record filed
with this Court, we abated this matter back to the trial court to file the
requested findings and conclusions.Â 
These findings and conclusions were subsequently filed and are part of
the record in this appeal.

Appellant has appealed contending
that the trial courtÂs admission of his videotaped confession and the
Areceneaux picture was reversible error.Â 
Further, appellant contends that the statutory punishment scheme for a
capital murder conviction where the death penalty is not being sought is
unconstitutional.Â  We disagree with
appellantÂs contentions and will affirm.

Motion to Suppress

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
first two issues contend that the trial court abused its discretion by
admitting the videotaped confession over appellantÂs objection.Â  Issue one is based upon appellantÂs objection
that the confession was obtained in violation of article 38.21 of the Texas
Code of Criminal Procedure and, therefore, was not admissible pursuant to
article 38.23 of the Texas Code of Criminal Procedure.[3]Â  See Tex.
Code Crim. Proc. Ann. art. 38.21; art. 38.23 (West 2005).Â  Issue two contends that the same videotaped
confession was inadmissible because it was obtained in violation of the United
States Constitution. 

Â Â Â Â Â Â Â Â Â Â Â  Initially,
we must address the StateÂs contention that appellantÂs motion to suppress the
videotaped confession did not properly apprise the trial court that appellant
was objecting on the basis of the United States Constitution.Â  While the oral motion to suppress was not the
model of clarity, we feel certain that, when appellantÂs trial counsel urged
that the videotaped confession was inadmissible because the same was coerced by
the promise made to appellant, the trial court understood appellant to be
urging exclusion of the evidence on the basis of the United States
Constitution.Â  See Arizona v.
Fulminante, 499 U.S. 279, 285-86, 111 S.Ct 1246, 113 L.Ed.2d 302
(1991).Â  Accordingly, we do not agree
with the State that appellant has waived his United States Constitutional
claim.Â  Further, upon review of the trial
courtÂs findings of fact and conclusions of law, it is clear that the trial
court understood appellantÂs motion to include a United States Constitutional
claim.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  To
review the denial of a motion to suppress, we apply a bifurcated standard of
review.Â  See Hubert v. State,
312 S.W.3d 554, 559 (Tex.Crim.App. 2010).Â 
We review the trial courtÂs application of the law to the facts de novo.Â 
Id.Â  However, we defer to
the trial courtÂs determination of credibility and historical fact.Â  Id.Â 
Because the trial court is in the position to see the witnesses testify
and to evaluate their credibility, we must view the evidence in the light most
favorable to the trial courtÂs ruling.Â  See
Wiede v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007).Â  Where a trial court has made findings of
fact, as is the case here, we review the record to determine whether the
evidence, viewed in the light most favorable to the trial courtÂs ruling,
supports the fact findings entered.Â  See
State v. Kelly, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  Article
38.21

Turning first to the state statutory
argument put forth by appellant, article 38.21 provides that Âan accusedÂs
statement may be used against him at trial, if it appears that the same was
freely and voluntarily made without compulsion or persuasion, under the rules
hereinafter prescribed.ÂÂ  Appellant is
not contending that the rules prescribed by the statutory scheme were not
complied with.Â  It is appellantÂs
position that the detective who took appellantÂs videotaped confession, Mark
Ahearn, made promises to appellant that resulted in the confession and,
therefore, made the confession inadmissible.Â 
Specifically, appellant contends that Detective Ahearn induced
appellantÂs confession by promising him that he would be permitted to see his
family if he confessed.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
State contends that the promise that appellant could see his family was couched
in terms of seeing them when they finished the interview process before he was
taken to jail and was not conditional on appellant confessing.Â  Further, whatever the nature of the promise
made, the State contends that it was not of such a nature that it would cause
appellant to speak untruthfully.

Â Â Â Â Â Â Â Â Â Â Â  In
order for a promise to invalidate a confession under article 38.21, the promise
must be: 1) positive, 2) made or sanctioned by someone in authority, and 3) of
such an influential nature that it would cause a defendant to speak
untruthfully.Â  Martinez v. State,
127 S.W.3d 792, 794 (Tex.Crim.App. 2004).[4]Â  Appellant and the State agree that there was
a positive promise, that appellant could visit his family, made by a person in
authority, Detective Ahearn.Â  However, it
is the third element that is hotly contested, whether the promise at issue was
of such an influential nature that it would cause a defendant to speak untruthfully.

Â Â Â Â Â Â Â Â Â Â Â  The
trial court made specific findings of fact that address the issue of
discussions regarding appellantÂs family and promises made to appellant about
seeing his family.Â  The applicable
findings are:

4. Prior to and after the defendantÂs admission of capital murder,
Detective Ahearn told the defendant that after they had finished talking and
when they got through the entire story once, Detective Ahearn would let the
defendant talk to his family and say goodbye, and that defendantÂs family could
visit with the defendant before he was taken to the jailhouse.

5. The defendant was not told that he could not talk or visit with his
family if he refused to give a confession.

6. The defendant never requested nor was he denied the right to contact
any family members.

Our review of the record reveals that
the findings of the trial court regarding any promise made to appellant by
Detective Ahearn are supported in the testimony and on the videotape of the
confession.Â  See Kelly, 204
S.W.3d at 818.

Â Â Â Â Â Â Â Â Â Â Â  Additionally,
we note that, even if we were to agree with appellant that Detective Ahearn did
refuse to allow him to see his family until he confessed, the videotaped
confession would still have been admissible.Â 
This is because the type of promise made was not of the nature or type
that conferred such a benefit upon appellant as would cause him to speak
untruthfully.Â  See Martinez,
127S.W.3d at 795 (ÂUnder State law the determination is whether the officially
sanctioned positive promise would be likely to influence the defendant to speak
untruthfully and not whether the defendant in fact spoke untruthfully.Â).Â  Such was the finding of fact entered by the
trial court.Â  See Kelly,
204 S.W.3d at 818.Â  Again, the record
supports this finding.Â  We are of the
opinion that, even if Detective Ahearn had promised appellant that he could see
his family if he confessed, such a promise would not confer any benefit on
appellant that would cause him to speak untruthfully.Â  Accordingly, appellantÂs issue one is
overruled.

Â Â Â Â Â Â Â Â Â Â Â  United
States Constitution

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
second issue contends that the confession should have been suppressed because
it was obtained in violation of the safeguards contained in the United States
Constitution.Â  When focusing on an
alleged due process violation which resulted in the statement being obtained involuntarily,
the standard is whether all of the attendant circumstances reflect that
appellantÂs will was overborne.Â  See
Dickerson v. United States, 530 U.S. 428, 434, 120 S.Ct. 2326, 147
L.Ed.2d 405 (2000); see also Delao v. State, 235 S.W.3d
235, 239 (Tex.Crim.App. 2007), cert. denied, 552 U.S. 1168, 128 S.Ct. 1128, 169
L.Ed.2d 953, (2008).

Â Â Â Â Â Â Â Â Â Â Â  In
addition to the promises that appellant contends that Detective Ahearn made,
appellant points to his age, 20 years old, and alleged psychological problems
he was having as a result of his having been previously shot, as part of the
totality of the circumstance requiring the trial court to have found
appellantÂs confession involuntarily given.Â 
Giving full play to the totality of the circumstances, the record does not
support appellantÂs position.Â  That
appellant was upset and under stress is borne out in the video of the
confession interview.Â  However, a review
of the record shows that the only matter mentioned to the trial court, other
than the promise allegedly made by Detective Ahearn, was appellantÂs age, and
this was only argued in a very limited and cursory manner.Â  Nowhere in the objection during the hearing
on the motion to suppress or at the time StateÂs exhibit 54, the videotaped
confession, was offered does the record reflect that appellant contended that any
psychological issues might have weighed on his decision to confess.Â  To the extent appellant now attempts to argue
that subject matter, he is constrained from doing so as his objection at trial
does not comport to that argument in his brief.Â 
See Tex. R. App. P.
33.1(a)(1)(A).Â  Regarding appellantÂs
age, at trial appellantÂs attorney only mentions it in passing while arguing
the motion to suppress.Â  We will,
however, address this issue as having been brought to the trial courtÂs
attention.Â  See id.

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
age at the time of the statement was, according to his brief, 20 years.Â  The trial courtÂs findings of fact recite
that the statement was Âmade knowingly, intelligently, freely, and voluntarily
without any threats, compulsion, persuasion, duress, coercion, or other
improper influence.ÂÂ  In our review of
the record to ascertain the totality of the circumstances, we find nothing
indicating that appellant did not understand the nature of the questions asked
him or the implication of his answers.Â  Rather,
what we see is a younger man who understands that he is in a substantial amount
of trouble and appears to decide to confess once he realizes that his family
and friends have already talked to the police about his involvement in the
crime.Â  There is no demonstrative
overreaching by the police, nor is there any apparent coercion.Â  See Colorado v. Connelly, 479
U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (coercive police activity
is a necessary predicate to the finding that a confession was not voluntary
within the meaning of the Due Process Clause).Â 
Additionally, in addressing appellantÂs first issue, we found that the
trial courtÂs finding of fact that there were no promises made to appellant by
Detective Ahearn was supported in the record.Â 
In regard to the second issue, the trial courtÂs finding of fact
regarding a lack of coercion or overreaching is likewise supported in the
record.Â  Therefore, we overrule
appellantÂs second issue.Â  See Kelly,
204 S.W.3d at 818.

Admission of StateÂs Exhibit 58

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
third issue contends that, when the trial court allowed StateÂs exhibit 58 to
be admitted before the jury, the trial court abused its discretion.Â  StateÂs exhibit 58 was a picture drawn by
Holly Arceneaux shortly after the incident in question.Â  Arceneaux had been one of the customers
inside The Gas Pipe at the time of the shooting.Â  According to the record, Arceneaux drew the
picture in question while undergoing therapy as a result of witnessing the
events of that day.Â  According to
ArecneauxÂs testimony, the picture represents both the shooting and the
immediate aftermath of the shooting with the victim and others depicted.Â  Appellant objected that the picture was
irrelevant, prejudicial, and that better evidence existed in the form of the
surveillance camera photographs.Â  The
trial court overruled the objection and the exhibit was admitted before the
jury.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  When
dealing with issues regarding the admission of evidence, the standard of review
is abuse of discretion.Â  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).Â  A trial court abuses its discretion only when
the reviewing court can say with confidence that no reasonable perception of
the matter under consideration could have yielded the decision made by the
trial court.Â  See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).Â  If the trial court's decision is correct on
any theory of law applicable to the case, the decision will be sustained.Â  See State v. Ross, 32 S.W.3d
853, 855-56 (Tex.Crim.App. 2000).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  Evidence
is relevant if it tends to make the existence of a fact of consequence more or
less probable than it would be without the evidence.Â  See Tex.
R. Evid. 401.[5]Â  Relevant evidence is generally admissible
unless otherwise provided.Â  See
Rule 402.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
evidence at issue allegedly portrayed the scene of the shooting as it occurred
and immediately after it occurred.Â 
However, from our review of the exhibit, it is difficult to see how the
picture in question contributed anything of consequence toward proof of any of
the elements of the offense.Â  At best,
the picture was simply cumulative of the testimony of the witness.Â  If we assume the evidence had such limited
relevancy that it should not have been admitted, we must make further inquiry
about the harm to appellant from the admission of the exhibit.Â  

An erroneous admission of evidence is
judged for harm under the non-constitutional harm analysis of Texas Rule of
Appellate Procedure 44.2(b).Â  See Russell
v. State, 155 S.W.3d 176, 181 (Tex.Crim.App. 2005).Â  In conducting such an analysis, we may
disregard the error if, after examining the entire record, we have a fair
assurance that the error did not influence the jury, or had but a slight effect.Â  See Guevara v. State, 152
S.W.3d 45, 53 (Tex.Crim.App. 2004).Â  

Â Â Â Â Â Â Â Â Â Â Â  A
review of the record reveals that the events depicted in StateÂs exhibit 58
were testified to by several other witnesses, including Arceneaux.Â  Specifically, appellant was identified by
another participant in the shooting.Â  The
victimÂs condition after the shooting was described by several witnesses.Â  The surveillance videos displayed the actions
of appellant and the other participants.Â 
The appellant confessed to being the shooter.Â  Nothing in the record indicates that the
State unduly emphasized StateÂs exhibit 58.Â 


Â Â Â Â Â Â Â Â Â Â Â  Thus,
from our review of the entire record, we are assured that the admission of
StateÂs exhibit 58 did not influence the jury, or, at most, had a very
insubstantial influence in their returning a verdict against appellant.Â  Id.Â 
Therefore, we find that the admission of said exhibit did not affect
appellantÂs substantial rights.Â  Id.Â  Accordingly, the error in admission of the
exhibit was harmless and will be disregarded.Â 
See Rule 44.2(b).Â 
AppellantÂs third issue is overruled.

Mandatory Life Sentence

AppellantÂs fourth and fifth issues
contend that the conviction is invalid because the imposition of a mandatory
life sentence without parole violates the Eighth Amendment of the United States
Constitution (issue four) and Article 1, Sections 13 and 15, of the Texas
Constitution (issue five) because such an ÂautomaticÂ sentence denied appellant
his right to an individualized sentence.

First, the record does not include
any objection during the trial to the application of the statute governing
punishment for capital murder when the State waives the death penalty.Â  See Tex.
Penal Code Ann. Â§ 12.31(a).Â  Thus,
it appears that appellantÂs claim, which we read to be attacking the sentencing
scheme as being applied to appellant under a disproportionate sentence analogy,
is an Âas appliedÂ attack against the statute as opposed to a ÂfacialÂ
challenge against the statute.[6]Â  Appellant has failed to preserve this
objection for our review.Â  Rule 33.1(a)(1)(A).Â  The inaction of appellant at trial leaves the
Court with nothing to review.[7]Â  Accordingly, appellantÂs fourth and fifth
issues are overruled.

Conclusion

Having overruled appellantÂs issues,
the judgment of the trial court is affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Publish.

Â 

Â 











[1] See Tex. Penal Code Ann. Â§ 19.03(a)(2) (West 2011).





[2] See Tex. Penal Code Ann. Â§ 12.31(a) (West 2011).





[3] Further reference to the Texas Code of Criminal
Procedure will be by reference to Âarticle ___Â or Âart. ___.Â 





[4] See also Perales v. State, No.
2-07-268-CR., 2008 Tex. App. LEXIS 7675, at *11-*12 (Tex.App.ÂFort Worth 2008,
pet. refÂd, untimely filed) (not designated for publication); Wells v. State,
No. 2-05-352-CR, 2007 Tex. App. LEXIS 2544, at *10 (Tex.App.ÂFort Worth 2007,
no pet.) (not designated for publication).





[5] Further reference to the Texas Rules of Evidence will
be by reference to ÂRule ___.Â





[6] Even if we viewed the issues as being a facial attack
against the statute, appellantÂs failure to object at trial would have
forfeited his issues.Â  See Karenev
v. State, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009).

Â 





[7] Even were we to accept that appellant had no
requirement to object at trial, the decided case law is against appellant and
we would not sustain his fourth and fifth issues.Â  See Sierra v. State, 157 S.W.3d
52, 64-65 (Tex.App.ÂFort Worth 2004), affÂd, 218 S.W.3d 85 (Tex.Crim.App.
2007).