IN THE COURT OF CRIMINAL APPEALS


OF TEXAS








NO. AP-74,595






PETE RUSSELL, JR., Appellant



v.



THE STATE OF TEXAS






APPEAL FROM


HARRIS COUNTY






 Womack, J., delivered the opinion for a unanimous court.



 In February 2003, a jury convicted the appellant of a capital murder (1) that was committed
on August 13, 2001. Pursuant to the jury's answers to the statutory special issues, (2) the trial court
sentenced the appellant to death. (3) Appeal to this Court is automatic. (4) We affirm.

 The appellant raises four points of error. Although he does not challenge the sufficiency
of the evidence at either stage of trial, a brief recitation of the facts will give a context for his
points.

 The appellant was convicted of intentionally causing the death of Tanjala Brewer while in
the course of committing or attempting to commit the offense of retaliation against her. Brewer
was in a relationship with the appellant, and she also was a police informant. On May 2, 2001,
she took undercover narcotics officer D.K. Bush to the appellant's house and introduced them.
The appellant agreed to sell Bush several ounces of crack cocaine. The appellant said that he
could provide it. A few hours later, Bush called the appellant to arrange the transaction. The two
met at a store and completed the transaction. Bush signaled other officers to arrest the appellant.

 On August 9, 2001, the appellant pleaded guilty to the charge of delivering a controlled
substance and received a ten-year sentence. He asked the court to delay the date for execution of
the sentence. The court reset the case, and the appellant agreed to turn himself in on September 7.

 Around 11:00 p.m. on August 12, Brewer's neighbor, Andre Wilson, saw Brewer and the
appellant walking down the street near Brewer's house. After the appellant left and shortly before
midnight, Brewer's boyfriend, Wilbert Reed, stopped by Brewer's house and spent some time
with her before he went to work. He called Brewer from his workplace every thirty minutes or so
throughout his shift, but he always got a busy signal. 

 About 1:00 a.m., Wilson heard Brewer's screen door close, and he saw the appellant
walking down Brewer's driveway. The appellant was running by the time he reached the street.
Brewer was found dead around 9:30 that morning. Natural gas valves had been turned on in the
house, and candles were burning.

 Wilson's account and evidence at the scene led police to suspect the appellant. When they
found him at a local motel, the appellant was sitting in the bathtub, fully clothed, with a bottle of
rat poison in his hand, and he was foaming at the mouth. Officers took the appellant to a hospital
where his stomach was pumped. At the hospital, the appellant said (in a tape-recorded statement)
that after he had broken off his relationship with Brewer, she had set him up. He admitted killing
her.

Point One


 In his first point of error, the appellant complains that the trial court erred in allowing the
jury to use transcripts of his recorded oral statements to assist them during deliberations. Before
trial, the appellant moved to suppress the two oral statements he had given. During a hearing on
the motion, the State offered the audiotapes of the two statements into evidence. The State also
gave the court written transcripts of the tapes. The judge noted on the record that he recognized
the transcripts were not evidence but were only to assist him in listening to the tapes. The
appellant commented that he had "no objection to the Court following along with" the transcripts. The court denied the appellant's motion to suppress the audiotaped confessions and
overruled the objection that they were of "poor audio quality" and unable to be understood
without the assistance of a transcript.

 At trial, the officer who had taken the confessions testified that the transcripts fairly and
accurately depicted what was on the audiotapes. The court admitted the audiotapes into evidence
over the appellant's objection and admitted the transcripts of the tapes as demonstrative
evidence. The appellant did not object to the admission of the transcripts, but he did request a
"prophylactic explanation" to the jury that the transcripts were only to be used as a guide. When
the jurors were given copies of the transcripts, the court instructed them that the transcripts were
to assist them, if they could, in understanding what was said on the tapes. The court told them
that the substantive evidence was what was stated on the tapes and the jury would not be allowed
to take the transcripts into the jury room with them.

 After the jury had retired to deliberate, the foreman sent a note requesting that the jurors
be allowed to listen to the audiotapes and to use the transcripts to aid them. The appellant agreed
that the jury was entitled to listen to the tapes, but he argued that use of the transcripts was
improper because the jury was engaged in deliberations. The State responded that the court could
suspend deliberations and bring the jury back into open court to listen to the tapes with the aid of
the transcripts. After verifying that the appellant did not dispute the general accuracy of the
transcripts, the court brought the jurors back into the courtroom and instructed them that they
would be allowed to use the transcripts to assist them in listening to the tapes. The court
reminded them that the transcripts were not substantive evidence, and if they noticed a discrepancy between what they heard on the tape and what they read in the transcript, they were to
resolve it in favor of what they heard on the tape. The jurors were then handed copies of the
transcripts and allowed to listen to the tapes. After the tapes were played, the bailiff collected the
transcripts, and the jury returned to the jury room to resume deliberating.

 The appellant argues that the statute allowing the jury to receive "any exhibits admitted as
evidence in the case" (5) does not include demonstrative exhibits. He also says that once the jury
has retired to deliberate, the deliberation cannot be suspended and resumed. We need not decide
those issues. Even if it were error for the court to have furnished the transcripts, the appellant
suffered no harm.

 Under Rule of Appellate Procedure 44.2(b), this Court disregards all non-constitutional
errors that do not affect the appellant's substantial rights. A substantial right is affected "when
the error has a substantial and injurious effect or influence in determining the jury's verdict." (6)

 The jurors did not discuss the case while they were in open court, and they reviewed
exactly what they reviewed during trial -- no more and no less. This procedure did not affect the
appellant's substantial rights. The appellant's first point of error is overruled. 

Point Two


 In his second point of error, the appellant complains that the trial court abused its
discretion by allowing a witness for the State to remain in the courtroom throughout the guilt
stage of trial "absent a showing by the State that he fell within an expressed exemption or
exception in Texas Rules of Evidence, Rule 614." (7)

 The procedure of excluding witnesses from the courtroom is commonly called putting the
witnesses "under the rule." The purpose of placing witnesses under the rule is to prevent the
testimony of one witness from influencing the testimony of another, consciously or not. (8)

 Several articles in Chapter 36 of the Code of Criminal Procedure speak to witnesses
under the rule. The main features of the procedure are stated in Articles 36.05 and 36.06. The
former says, "[I]n no case where the witnesses are under rule shall they be allowed to hear any
testimony in the case." The latter says, "Witnesses, when placed under rule, shall be instructed by
the court that they are not to converse with each other or with any other person about the case
except by permission of the court, and that they are not to read any report of or comment upon
the testimony in the case while under rule."

 Rule of Evidence 614 speaks to the issue of which witnesses may be excluded. It does not
authorize the court to exclude certain witnesses. In criminal cases, those witnesses are (1) a
defendant who is a natural person, the representative of a defendant that is not a natural person,
(2) a person whose presence a party shows to be essential to the presentation of the party's case,
and (3) a victim if the court does not determine that the victim's testimony would be materially
affected by hearing other testimony. (9) (A statute also speaks to the exclusion of victims, their
guardians, and close relatives of deceased victims. (10) It is not involved in this point of error.)

 Under Rule 614, a party has the burden to show that its witness is one of those whose
exclusion from the courtroom is not authorized by that Rule. (11)

 Before the jury was brought into the courtroom, both parties requested that the court put
the witnesses under the rule. The court instructed all the witnesses who were present not to
discuss their testimony among themselves or with anyone other than the lawyers, and to retire to
the hallway until they were called to testify.

 After the pleadings and opening statements had been presented to the jury and three
witnesses had testified, the prosecutor asked the court's permission for Police Sergeant Hal
Kennedy, who "wasn't here earlier this morning , to sit with us at counsel table as the case
agent" because "he was the primary homicide detective on the case." The following exchange
occurred:

 THE COURT: Okay.


 [DEFENSE COUNSEL:] I thought that was a federal rule. I didn't think it
applied to state court.


 THE COURT: Well, it's --


 [DEFENSE COUNSEL:] We would object for purposes of the record.


 THE COURT: Okay. I will overrule your objection and he will be allowed
to serve as case agent and sit at counsel table.


 [THE STATE:] He's also going to be a witness in the trial.


 THE COURT: But he also will be placed under the Rule also [sic].


 [THE STATE:] Yes, sir. He wasn't placed under the Rule earlier because
he wasn't here, but he's here now.


 THE COURT: Bring him up and let's do that up here at the bench.


 [DEFENSE COUNSEL:] I presume that by you saying that he is going to
be under the Rule, Your Honor, that this is going to preclude him from
participating in any further investigation should something develop at trial
that he has to go check out or determine what to do that he now becomes a
--


 THE COURT: That's a bridge we will cross when we get to it.


* * *



 Sergeant Kennedy, would you approach, please?


* * *



 You're going to be allowed to be case agent, sit at counsel table, but you
will be under the Rule. That means you may not discuss your testimony
among the other witnesses or with anyone other than the lawyers trying the
case.


 [THE STATE:] Thank you, Your Honor.


The State then called its next witness.

 The State's designating a witness as a "case agent" does not make a witness one whom
the court may not exclude from the courtroom under Rule 614. As the appellant correctly pointed
out in his objection, the government's designation of a "case agent" in the trial of a criminal case
is permitted in federal courts by the federal counterpart of Rule 614, (12) but it is not permitted in
the courts of this state. This Court deliberately chose to make our rule different when we adopted
Rule 614(2). (13) Neither the State nor a defendant who is a natural person may take away the
court's authority to exclude one of its witnesses by simply designating the witness.

 Because the State did not meet its burden to show that Kennedy was a witness whose
exclusion from the courtroom was not authorized by Rule 614, the trial court erred in permitting
Kennedy to remain in the courtroom during the trial.

 Recognizing that error occurred, we must now determine whether the error requires
reversal. Because the appellant complains about the violation of an evidentiary rule, the error is
non-constitutional and will be disregarded unless it affected the appellant's substantial rights. (14)
We hold that it did not.

 As previously noted, the purpose of placing a witness under the rule is to prevent that
witness from being influenced in his testimony by the testimony of another witness. The question
in assessing the harm of allowing Kennedy to remain in the courtroom is whether he was
influenced in his testimony by the testimony he heard.

 The appellant's brief argues that Kennedy was influenced in his testimony in that he
corroborated the other police officer who was present when the appellant gave his statement, and
he "contradicted appellant's testimony in two crucial areas":

 First, appellant testified that Sergeant Kennedy induced him to make an audio-taped statement because "this could help you in trial." Second, appellant explained that he referred to Ms. Brewer being an informant in his tape-recorded
statement because Sergeant Kennedy told him this fact before he gave the statement. Appellant, had heard a rumor that Ms. Brewer had "set him up", but he did
not have that confirmed until Sergeant Kennedy confirmed it. (15)


 Kennedy and Officer Richard Moreno were the only officers who were present when the
appellant made his oral statements. The State called both officers to testify in its case in chief.
The prosecutor asked each officer whether he knew that Brewer was an informant, and each
testified that he did. The prosecutor asked each officer whether he told the appellant that Brewer
was an informant or heard the other officer say anything to the appellant about Brewer's being an
informant. Each testified that he did not. Before Kennedy testified, he had heard Moreno's
answers.

 When the appellant testified in his case in chief, he admitted killing Brewer but stated that
he had done so in a jealous rage. He testified that the only reason he said what he did in his first
statement was because Kennedy told him that Brewer had set him up. He said that Kennedy told
him, before he gave his tape-recorded statement, that "your girl set you up with the law." His
counsel asked him whether, before he talked with Kennedy, he was "ever sure that Ms. Brewer
had anything to do with your arrest." He said, "I didn't really just knew [sic] until he told me."

 On cross-examination, the appellant admitted that it was "the talk on the streets" for
months that Brewer had informed on him, that "probably" he suspected that she had done so, and
that when Kennedy asked him on the tape recording what happened, the first words out of his
mouth were, "She set me up with the police." This was a reference to the first question and
answer in his oral statement:

 KENNEDY: Okay. Now you know why you're under arrest? You're under
arrest for murder you know that? In your own words tell me what happened and why you did what you did.


 RUSSELL: SheShe set-she set me up-she set me up with the police. (16)


 We also notice the sixth question and answer:

 KENNEDY: Okay ah now tell me how it is-how it is that she got killed
whatever.


 RUSSELL: Basically ah I went over her house and you know since she let
me in and she was smoking some drugs whatever and you know we were
just talking whatever you know about the things we used to do and I was
basically asking her "Why did you set me up?" "Why did you set me up"
and she kept on denying it talking about I ain't set you up. I ain't set you
up. (17)


 There was other impeachment of the appellant's claim he did not know that Brewer had
cooperated with police before Officers Kennedy and Moreno told him about it in the hospital.
Brewer's "best friend," Deborah Calhoun, testified that in early July, more than a month before
the murder, the appellant told her that he knew Brewer had set him up in his case and that he
appeared to be angry about it.

 After the appellant rested, the State called Kennedy to the stand in rebuttal. He denied
again that he told the appellant about Brewer's being an informant.

 We see no likelihood that Kennedy's denial that he told the appellant that making a
statement could help him, and his denial that he told the appellant that Brewer was an informant,
were influenced by his hearing the testimony of Moreno and the appellant. We will not say from
this record that the court's error in allowing Kennedy to remain in the courtroom had a substantial and injurious effect or influence in determining the jury's verdict. The error did not affect the
appellant's substantial rights. Point of error two is overruled.

Point Three


 The appellant complains in his third point of error that the trial court erred in permitting
the State to cross-examine him during the guilt stage of trial regarding an extraneous drug
offense. He asserts that this evidence was not relevant at the guilt stage of trial, tended to show
only that he was a criminal generally, and prejudiced his credibility as a witness.

 Although the appellant objected to the admission of nineteen photographs, his brief does
not discuss these exhibits. His only specific complaint is, "The State forced appellant to admit
that he possessed crack cocaine at his residence," citing one page of the reporter's record. There
the State asked the appellant about a photograph: "State's Exhibit 211, what is that?"

 The appellant answered, "Crack cocaine.  Looks like it was in the truck." 

 The State then asked, "This is stuff that you sold or some of the stuff that you sold to
Officer Bush after Tanjala [Brewer] introduced you to him, isn't it, sir?"

 The appellant answered, "Yes, sir."

 Next the State asked the appellant about another photograph: "State's Exhibit No. 199, is
that your car?" The appellant testified that it was his mother's car, and that he was driving it
when he sold the cocaine to Officer Bush.

 These questions, and the photographs on which they were based, were about the offense
of cocaine delivery to Bush for which the appellant had been indicted and convicted before the
murder -- the offense that began when Brewer cooperated with Officer Bush by introducing him
to the appellant. The indictment alleged that it was in retaliation for that act of cooperation that
the appellant killed Brewer. This was not an irrelevant, extraneous offense that showed only that
the appellant was a criminal generally. There was no error in the admission of the two photographs or the cross-examination during which they were admitted.

 There are no other complaints in point of error three that are sufficiently specific for us to
identify and answer. The point is overruled.

Point Four


 In his fourth point of error, the appellant claims the Texas death-penalty scheme is
unconstitutional because it allows the application of the death penalty without providing
meaningful appellate review of any of the special issues giving rise to the sentence of death. This
Court has previously addressed and rejected this precise contention. (18) The appellant has given us
no reason to revisit the issue here. Point of error four is overruled. 

 We affirm the judgment of the trial court. 


En banc.

Delivered February 2, 2005.

Publish.
1. See Tex. Penal Code § 19.03(a)(2).
2. See Tex. Code Crim. Proc. art. 37.071, §§ 2(b) & (e).
3. See id., § 2(g).
4. See id., § 2(h).
5. See id., art. 36.25 ("There shall be furnished to the jury upon its request any exhibits admitted
as evidence in the case").
6. Simpson v. State, 119 S.W.3d 262, 266 (Tex. Cr. App. 2003), cert. denied, 124 S.Ct. 2837
(2004).
7. Brief, at 25.
8. Routier v. State, 112 S.W.3d 554, 590 (Tex. Cr. App. 2003), cert. denied, 124 S.Ct. 2157
(2004); Bell v. State, 938 S.W.2d 35, 50 (Tex. Cr. App. 1996), cert. denied, 522 U.S. 827 (1997).
9. "Rule 614. Exclusion of Witnesses


 "At the request of a party the court shall order witnesses excluded so that they cannot hear the
testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize
the exclusion of:

 "(1) a party who is a natural person or in civil cases the spouse of such natural person;

 "(2) an officer or employee of a party in a civil case or a defendant in a criminal case that is not a
natural person designated as its representative by its attorney;

 "(3) a person whose presence is shown by a party to be essential to the presentation of the party's
cause; or

 "(4) the victim in a criminal case, unless the victim is to testify and the court determines
that the victim's testimony would be materially affected if the victim hears other
testimony at the trial."
10. See Tex. Code Crim. Proc. art. 36.03(a)-(d).
11. Moore v. State, 882 S.W.2d 844, 848 (Tex. Cr. App. 1994).
12. See F. R. Evid. 615 ("This rule does not authorize exclusion of  (2) an officer or employee
of a party which is not a natural person designated as its representative by its attorney ").
13. "This rule does not authorize exclusion of:  (2) an officer or employee of a party in a civil
case or a defendant in a criminal case that is not a natural person designated as its representative by its
attorney ." Tex. R. Evid. 614 (emphasis added). See 1 Steven Goode et al., Tex as Practice --
Guide to the Texas Rules of Evidence § 614.1 n.18 (1993).
14. Tex. R. App. P. 44.2(b).
15. Brief, at 28-29.
16. State's Exhibit 1A, at 1-2 (punctuation, including ellipsis, sic).
17. Id., at 2 (punctuation sic).
18. Valle v. State, 109 S.W.3d 500, 502-03 (Tex. Cr. App. 2003).