TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00094-CR






Zackary Grigsby, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY

NO. C1-CR-08-219276, HONORABLE MIKE DENTON, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 After a bench trial, appellant Zackary Grigsby was convicted of assault with a finding
of family violence, a class A misdemeanor. See Tex. Penal Code Ann. § 22.01 (West Supp. 2008). 
The trial court assessed punishment at 220 days' confinement. On appeal, Grigsby argues that the
trial court erred in allowing a witness to testify after a violation of Texas Rule of Evidence 614,
commonly referred to as "the Rule." See Tex. R. Evid. 614 ("At the request of a party, the court
shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may
make the order of its own motion."). We affirm the judgment of conviction.



BACKGROUND

 On October 15, 2008, at approximately 9:45 a.m., Jonestown police officers
Justin Postell and Scott Patrolia were dispatched on a domestic disturbance call to the home shared
by Grigsby and Kristina Hendrix, the victim in this case. Grigsby and Hendrix dispute the series of
events that led to the police being called to the home. Hendrix testified at trial that the
altercation began when, in an attempt to get out of bed that morning, she had nudged Grigsby's
foot and inadvertently caused his foot to strike the couple's 18-month-old son. According to
Hendrix, Grigsby then became angry, punching her in the arm and slapping her in the face with the
back of his hand. 

 Grigsby, on the other hand, provided police with a written statement claiming that he
and Hendrix had gotten into an argument that morning and that Hendrix had intentionally kicked him
in the leg, causing his leg to hit their son in the face. According to Grigsby, Hendrix then began
physically attacking him, requiring him to defend himself by grabbing her arms and pushing her
away. Grigsby's brother, Christopher, (1) testified at trial that he was also in the house at the time of
the events and that he observed Hendrix attacking Grigsby in a manner consistent with
Grigsby's statement.

 It is undisputed that immediately after the altercation, Hendrix left the home with the
couple's two children, and Officers Postell and Patrolia arrived a few minutes later. Postell testified
that when he knocked on the front door of the home, Christopher came to the door and informed him
that Grigsby was not there. Postell then asked Christopher for some form of identification, and when
Christopher entered the home to retrieve it, Postell observed Grigsby "poking his head out from a
small closet in the bedroom." Christopher later testified that he initially told the police that Grigsby
was not home because at the time, he believed that statement to be true. Christopher explained that
immediately after Hendrix left the home, he had gone outside to smoke a cigarette on the front porch,
and had assumed that while he was out there, Grigsby had exited the home through a side
or back door. 

 Hendrix was called back to the scene for questioning and when she arrived, Postell
observed and photographed the beginning stages of a bruise on her upper arm. Postell also
documented and photographed an injury to Grigsby's arm, but stated at trial that he did not know
what had caused this injury. Postell testified that based on the bruising on Hendrix's arm, which was
consistent with her version of the events, and the fact that Grigsby had hidden from the police in a
bedroom closet, he determined that Grigsby was the primary aggressor and arrested him for assault. (2)

 Patrolia testified that he interviewed Grigsby at the scene and that Grigsby stated that
Hendrix had kicked him. According to Patrolia, "I asked him if he could roll his pant leg up to see
if there [were] any marks and he responded that there [were not] any and did not roll his pant leg up."

 After hearing the evidence, the trial court found Grigsby guilty of the assault with a
finding of family violence. In reaching this conclusion, the trial court noted that it did not find
Christopher to be a credible witness, and further stated that "[f]light is evidence of guilt." 
The trial court sentenced Grigsby to 220 days' confinement, and this appeal followed.


STANDARD OF REVIEW

 The rule of witness sequestration, or the Rule, provides for the exclusion of witnesses
from the courtroom during trial. Tex. R. Evid. 614. The purpose of the Rule is to prevent the
testimony of one witness from influencing the testimony of another. Russell v. State, 155 S.W.3d
176, 179 (Tex. Crim. App. 2005). If a witness violates the Rule by remaining in the courtroom
after the Rule is invoked, the testimony of that witness may be admitted or excluded at the
trial court's discretion. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, the
trial court's decision to admit testimony will not be disturbed absent an abuse of that discretion. Id. 
 "In reviewing the trial court's decision to allow the testimony, we look at whether or not the
defendant was harmed or prejudiced by the witness's violation; that is, whether or not the witness's
presence during other testimony resulted in injury to the defendant." Id. 


DISCUSSION

 In his sole issue on appeal, Grigsby argues that the trial court erred in allowing
Patrolia to testify after a violation of the Rule, referring to an incident in which defense counsel
observed Patrolia speaking to Hendrix and Postell shortly before Patrolia's testimony. The State
responds that Grigsby failed to preserve this error for appellate review.

 The Rule was invoked when the bench trial began. After Hendrix and Postell had
testified and just prior to Patrolia's testimony, there was a brief recess while a photograph was
copied for the purpose of admitting it into evidence. When the court came back on the record, the
following exchange took place:


DEFENSE: When I was going to check on the status of my photograph, I think
the State may have violated the Rule. I say that because I noticed the
complaining witness, previous officer and this gentleman sitting in
the witness box now, all conferring, and that's a violation of the Rule. 
I just want to make a hearing about that prior to this witness
testifying. It may not be a violation, it may or may not.


COURT: So State tell me what's going on.


STATE: Well basically the victim has to go pay her parking meter and she was
wondering if one of the officers could walk her to the car because she
was worried about that, so we were--


COURT: Was there any discussion about the facts that we're discussing here
today?


STATE: Not to my knowledge.


COURT: Okay, do you wish to go further than that counsel?


DEFENSE: I would like to ask the officer a question or two.



 Defense counsel was then permitted to take Patrolia on voir dire, where the following
exchange occurred: 


Q: Just a few moments ago, is it fair to say that you were conferring with
the State about this case?


A: Yes.


Q: What were y'all discussing?


A: Just preparing my testimony.


Q: And that was just a moment ago?


A: No, sir.


Q: When was that?


A: As far as when we were?


Q: As far as when was that?


A: Yesterday.


Q: Okay, did you visit with them today?


A: Yes.


Q: Did you visit with them just a few minutes ago?


A: Not about the case, no. They came in and got me that was it.


Q: Well I just happen to notice you were sitting with the alleged victim
and also your brother officer; is that right?


A: He just came out of the courtroom.


Q: Okay I understand that, when he came out [the] prosecutor came out;
right?


A: Yes, sir.


Q: Were you standing right there?


A: Yes, sir.


Q: What was the conversation?


A: Change for the meter outside.


Q: Okay.


DEFENSE: No further questions.


COURT: Alright go ahead, State.



 The State then began its direct examination of Patrolia and no further mention was
made of any potential violation of the Rule.

 In order to preserve a complaint for appellate review, a party must make a timely and
specific objection at trial and obtain a ruling on that objection. Tex. R. App. P. 33.1; see also
Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (observing that one purpose of
Rule 33.1 is to ensure "that the trial court will have an opportunity to prevent or correct errors"). 

 Grigsby argues that defense counsel properly preserved error by stating, "I think the
State may have violated the Rule," and by taking the witness on voir dire. However, as the quoted
portion of the record reflects, counsel did not pursue the issue further after taking the witness on
voir dire, and appears to have been satisfied that no violation of the Rule occurred. Importantly,
counsel did not obtain a ruling from the trial court, nor did he object to the trial court's failure to
rule. See Tex. R. App. P. 33.1(a)(2). As a result, Grigsby's complaint has not been properly
preserved for appellate review.

 Furthermore, even if error had been properly preserved, the trial court did not abuse
its discretion in admitting Patrolia's testimony. While Grigsby relies heavily on Patrolia's initial
statement that he was, "Just preparing my testimony," when conferring with the State, the context
of that statement makes it clear that Patrolia was in fact referring to a conversation that had taken
place the day before. Patrolia later stated that the conversation observed by defense counsel at trial
was limited to the topic of Hendrix's need to attend to a parking meter. This explanation, which was
consistent with the prosecutor's description of the conversation, could have reasonably allowed the
trial court to conclude that Patrolia did not confer with the other witnesses on an issue relevant to
Grigsby's guilt or innocence and therefore that no violation of the Rule occurred. (3) See
Archer v. State, 703 S.W.2d 664, 667 (Tex. Crim. App. 1986) (holding that Rule is violated when
State witnesses confer on issue bearing on guilt or innocence of accused). 

 Because no error was preserved regarding any alleged violation of the Rule, we
overrule Grigsby's issue on appeal.


CONCLUSION

 We affirm the judgment of conviction.

 

 ___________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: August 31, 2009

Do Not Publish




1. To avoid confusion, we will refer to Christopher Grigsby as "Christopher."
2. Postell testified that his decision was also based on prior incidents of violence that had been
brought to his attention. However, after all evidence had been presented, the trial court stated,
"I know both sides pretty much opened the door as to prior violence but I'm going to exclude that."
3. Error in allowing testimony after a violation of the Rule is considered "non-constitutional
and will be disregarded unless it affected the appellant's substantial rights." Russell v. State,
155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)). In this case,
Grigsby's substantial rights were not affected because no violation of the Rule occurred.