# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00094-CR

**Zackary Grigsby, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C1-CR-08-219276, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, appellant Zackary Grigsby was convicted of assault with a finding of family violence, a class A misdemeanor. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2008). The trial court assessed punishment at 220 days' confinement. On appeal, Grigsby argues that the trial court erred in allowing a witness to testify after a violation of Texas Rule of Evidence 614, commonly referred to as "the Rule." *See* Tex. R. Evid. 614 ("At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."). We affirm the judgment of conviction.

## BACKGROUND

On October 15, 2008, at approximately 9:45 a.m., Jonestown police officers Justin Postell and Scott Patrolia were dispatched on a domestic disturbance call to the home shared by Grigsby and Kristina Hendrix, the victim in this case. Grigsby and Hendrix dispute the series of

events that led to the police being called to the home. Hendrix testified at trial that the altercation began when, in an attempt to get out of bed that morning, she had nudged Grigsby's foot and inadvertently caused his foot to strike the couple's 18-month-old son. According to Hendrix, Grigsby then became angry, punching her in the arm and slapping her in the face with the back of his hand.

Grigsby, on the other hand, provided police with a written statement claiming that he and Hendrix had gotten into an argument that morning and that Hendrix had intentionally kicked him in the leg, causing his leg to hit their son in the face. According to Grigsby, Hendrix then began physically attacking him, requiring him to defend himself by grabbing her arms and pushing her away. Grigsby's brother, Christopher,[1] testified at trial that he was also in the house at the time of the events and that he observed Hendrix attacking Grigsby in a manner consistent with Grigsby's statement.

It is undisputed that immediately after the altercation, Hendrix left the home with the couple's two children, and Officers Postell and Patrolia arrived a few minutes later. Postell testified that when he knocked on the front door of the home, Christopher came to the door and informed him that Grigsby was not there. Postell then asked Christopher for some form of identification, and when Christopher entered the home to retrieve it, Postell observed Grigsby "poking his head out from a small closet in the bedroom." Christopher later testified that he initially told the police that Grigsby was not home because at the time, he believed that statement to be true. Christopher explained that immediately after Hendrix left the home, he had gone outside to smoke a cigarette on the front porch,

---

[1] To avoid confusion, we will refer to Christopher Grigsby as "Christopher."

2

and had assumed that while he was out there, Grigsby had exited the home through a side or back door.

Hendrix was called back to the scene for questioning and when she arrived, Postell observed and photographed the beginning stages of a bruise on her upper arm. Postell also documented and photographed an injury to Grigsby's arm, but stated at trial that he did not know what had caused this injury. Postell testified that based on the bruising on Hendrix's arm, which was consistent with her version of the events, and the fact that Grigsby had hidden from the police in a bedroom closet, he determined that Grigsby was the primary aggressor and arrested him for assault.[2]

Patrolia testified that he interviewed Grigsby at the scene and that Grigsby stated that Hendrix had kicked him. According to Patrolia, "I asked him if he could roll his pant leg up to see if there [were] any marks and he responded that there [were not] any and did not roll his pant leg up."

After hearing the evidence, the trial court found Grigsby guilty of the assault with a finding of family violence. In reaching this conclusion, the trial court noted that it did not find Christopher to be a credible witness, and further stated that "[f]light is evidence of guilt." The trial court sentenced Grigsby to 220 days' confinement, and this appeal followed.

## STANDARD OF REVIEW

The rule of witness sequestration, or the Rule, provides for the exclusion of witnesses from the courtroom during trial. Tex. R. Evid. 614. The purpose of the Rule is to prevent the

---

[2] Postell testified that his decision was also based on prior incidents of violence that had been brought to his attention. However, after all evidence had been presented, the trial court stated, "I know both sides pretty much opened the door as to prior violence but I'm going to exclude that."

3

testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). If a witness violates the Rule by remaining in the courtroom after the Rule is invoked, the testimony of that witness may be admitted or excluded at the trial court's discretion. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, the trial court's decision to admit testimony will not be disturbed absent an abuse of that discretion. *Id.* "In reviewing the trial court's decision to allow the testimony, we look at whether or not the defendant was harmed or prejudiced by the witness's violation; that is, whether or not the witness's presence during other testimony resulted in injury to the defendant." *Id.*

## DISCUSSION

In his sole issue on appeal, Grigsby argues that the trial court erred in allowing Patrolia to testify after a violation of the Rule, referring to an incident in which defense counsel observed Patrolia speaking to Hendrix and Postell shortly before Patrolia's testimony. The State responds that Grigsby failed to preserve this error for appellate review.

The Rule was invoked when the bench trial began. After Hendrix and Postell had testified and just prior to Patrolia's testimony, there was a brief recess while a photograph was copied for the purpose of admitting it into evidence. When the court came back on the record, the following exchange took place:

> DEFENSE: When I was going to check on the status of my photograph, I think the State may have violated the Rule. I say that because I noticed the complaining witness, previous officer and this gentleman sitting in the witness box now, all conferring, and that's a violation of the Rule. I just want to make a hearing about that prior to this witness testifying. It may not be a violation, it may or may not.

4

COURT:      So State tell me what's going on.

STATE:      Well basically the victim has to go pay her parking meter and she was wondering if one of the officers could walk her to the car because she was worried about that, so we were—

COURT:      Was there any discussion about the facts that we're discussing here today?

STATE:      Not to my knowledge.

COURT:      Okay, do you wish to go further than that counsel?

DEFENSE:    I would like to ask the officer a question or two.

Defense counsel was then permitted to take Patrolia on voir dire, where the following exchange occurred:

Q:      Just a few moments ago, is it fair to say that you were conferring with the State about this case?

A:      Yes.

Q:      What were y'all discussing?

A:      Just preparing my testimony.

Q:      And that was just a moment ago?

A:      No, sir.

Q:      When was that?

A:      As far as when we were?

Q:      As far as when was that?

A:      Yesterday.

Q:       Okay, did you visit with them today?

A:       Yes.

Q:       Did you visit with them just a few minutes ago?

A:       Not about the case, no.  They came in and got me that was it.

Q:       Well I just happen to notice you were sitting with the alleged victim
         and also your brother officer; is that right?

A:       He just came out of the courtroom.

Q:       Okay I understand that, when he came out [the] prosecutor came out;
         right?

A:       Yes, sir.

Q:       Were you standing right there?

A:       Yes, sir.

Q:       What was the conversation?

A:       Change for the meter outside.

Q:       Okay.

DEFENSE:   No further questions.

COURT:     Alright go ahead, State.

The State then began its direct examination of Patrolia and no further mention was made of any potential violation of the Rule.

In order to preserve a complaint for appellate review, a party must make a timely and specific objection at trial and obtain a ruling on that objection.  Tex. R. App. P. 33.1; *see also*

*Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (observing that one purpose of Rule 33.1 is to ensure "that the trial court will have an opportunity to prevent or correct errors").

Grigsby argues that defense counsel properly preserved error by stating, "I think the State may have violated the Rule," and by taking the witness on voir dire. However, as the quoted portion of the record reflects, counsel did not pursue the issue further after taking the witness on voir dire, and appears to have been satisfied that no violation of the Rule occurred. Importantly, counsel did not obtain a ruling from the trial court, nor did he object to the trial court's failure to rule. *See* Tex. R. App. P. 33.1(a)(2). As a result, Grigsby's complaint has not been properly preserved for appellate review.

Furthermore, even if error had been properly preserved, the trial court did not abuse its discretion in admitting Patrolia's testimony. While Grigsby relies heavily on Patrolia's initial statement that he was, "Just preparing my testimony," when conferring with the State, the context of that statement makes it clear that Patrolia was in fact referring to a conversation that had taken place the day before. Patrolia later stated that the conversation observed by defense counsel at trial was limited to the topic of Hendrix's need to attend to a parking meter. This explanation, which was consistent with the prosecutor's description of the conversation, could have reasonably allowed the trial court to conclude that Patrolia did not confer with the other witnesses on an issue relevant to Grigsby's guilt or innocence and therefore that no violation of the Rule occurred.[3] *See*

---

[3] Error in allowing testimony after a violation of the Rule is considered "non-constitutional and will be disregarded unless it affected the appellant's substantial rights." *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)). In this case, Grigsby's substantial rights were not affected because no violation of the Rule occurred.

*Archer v. State*, 703 S.W.2d 664, 667 (Tex. Crim. App. 1986) (holding that Rule is violated when State witnesses confer on issue bearing on guilt or innocence of accused).

Because no error was preserved regarding any alleged violation of the Rule, we overrule Grigsby's issue on appeal.

## CONCLUSION

We affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   August 31, 2009

Do Not Publish