IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00241-CR

 

Gregory Carl Green,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 33,223-CR

 



MEMORANDUM  Opinion










 

Appellant was convicted by a jury of the
offense of sexual assault.  Tex. Pen. Code
Ann. § 22.011 (West Pamp. 2010).  The jury found an enhancement
paragraph alleging a final prior felony conviction for indecency with a child
to be true.  Based upon that finding, the trial court, as required by law,
automatically sentenced appellant to life in prison.  Tex. Pen. Code Ann. § 12.42(c)(2) (West Supp. 2010). 
Appellant appealed.

            In three issues, appellant
complains that the evidence was factually insufficient, that the trial court
erred in denying a mistrial after evidence of appellant’s “priors” was
inadvertently put before the jury, and the trial court erred by giving the jury
a document, not admitted into evidence, during its deliberations.  We overrule
these issues and affirm the conviction.

Sufficiency of
the Evidence

 

            The victim, M.O., was riding
in a car with friends when they met appellant.  Appellant was known to the
friends but not M.O.  At some point, M.O. and appellant exchanged phone
numbers.  She then dropped him off at his house and she went to work.

            Later that evening, M.O. met
appellant at his house.  Inside the house, they engaged in consensual kissing. 
When appellant started touching her, M.O. told him to stop.  Appellant didn’t
stop.  M.O.’s pants were removed.  Although M.O. again told appellant to stop,
he penetrated her female sexual organ with his penis and ejaculated inside
her.  M.O. did not scream.  She testified that she went “numb.”  After
appellant stopped, M.O. left immediately and drove to a friend’s house.  The
friend drove her to the police station.  A sexual assault exam was conducted at
a local hospital.  As the investigation was being conducted, appellant
attempted to contact M.O. and sent a series of text messages that included one
stating, “Im sorry Im bad.”  Appellant was arrested.  He told the investigator
that the only female he had contact with on the evening in question was his
wife.  A DNA sample was obtained from appellant.  Later testing matched the DNA
of appellant with the semen collected during the sexual assault exam of the
victim.

            All of the elements of the
offense were proven by testimony which is not now controverted, except for the
element of consent.  It is on the element of consent that appellant argues the
evidence was factually insufficient.

            The “factual insufficiency”
issue was premised on the Court of Criminal Appeals holding in Clewis v.
State, 922 S.W.2d 126 (Tex. Crim. App. 1996).  Since the briefs were filed,
Clewis was overruled.  Brooks v. State, 323 S.W.3d 893, 895 (Tex.
Crim. App. 2010).  Under Brooks, the dual concepts of “factual
insufficiency” and “legal insufficiency” are now a single “sufficiency”
standard, as was articulated by the United States Supreme Court in Jackson
v. Virginia, 443 U. S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).
 Under that standard, when reviewing the sufficiency of the evidence, we
look at all of the evidence in the light most favorable to the verdict in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson, 443 U. S. at
319; Brooks, 323 S.W.3d at 899, 912.

            Appellant’s sufficiency
argument identifies several facts and concludes that these facts make the
state’s evidence just too weak and inconclusive to support a conviction.  These
items were:  1) M.O. didn’t fight or scream; 2) M.O. went to appellant’s home;
3) M.O. agreed to kiss appellant; 4) M.O. wasn’t hit, bit, punched, slapped or
choked; 5) M.O.’s testimony concerning how her pants were removed was confused;
6) appellant was confused by M.O.’s reaction to the assault; and 7) M.O. had
previously acted irresponsibly by driving her sister’s car until it ran out of
gas.  Additionally, appellant’s mother testified that she was at the house when
the assault took place.  She testified she was a light sleeper, her bedroom
door was open, and that nothing had woken her up.

All of the factors relied upon by
appellant are attempts to undermine the credibility of M.O. by showing the
improbability of her testimony or by attacking her character.  The trial jury
saw and heard all of the evidence.  It was their duty to judge the credibility
of the witnesses and give their testimony the weight they thought it deserved.

            There is nothing inherently
unbelievable about M.O.’s testimony.  The act of driving to someone’s house and
voluntarily kissing them is not the equivalent of consent to either more
physical contact or a sexual assault.  There is nothing unbelievable about the
facts she went “numb” or that appellant didn’t have to beat or choke her.

            As for appellant’s mother’s
testimony, the jury was free to believe that, for whatever reason, she didn’t
wake up during the assault.  They could also determine that, from her interest
in the outcome of the case and relationship with the defendant, her testimony
was less than truthful.

            The elements of the offense
were uncontroverted except the issue of consent.  M.O. testified that she did
not consent and repeatedly told the defendant to stop.  The jury could evaluate
her testimony on both direct and cross-examination.  They also could consider
other factors including the immediacy of her outcry to her friend, the prompt
report to the police and her willingness to undergo a sexual assault exam. 
Additionally, the jury had a series of incriminating text messages that
appellant sent to M.O. shortly after the assault.  Finally, the jury had
evidence of appellant’s statement that he had no contact with any female,
except his wife, on the night in question.  This statement was shown to be
false by the DNA evidence.

            Viewing the evidence in the
light most favorable to the verdict, there was sufficient evidence to support
the jury’s determination that appellant committed the offense.  A rational
trier of fact could have found every element of the offense, including the lack
of consent issue, to be true.  Appellant’s first issue is overruled.

Evidence of
“Priors”

            In appellant’s next issue,
he argues the trial court erred in not granting a mistrial when the jury
received evidence about appellant’s “priors” which was inadvertently left
unredacted in an audio recording and the transcript of that recording.

            As part of their case, the
state played an audio recording of a custodial interview between a police
officer and appellant shortly after his arrest.  Appellant denied having
contact with any female, other than his wife, on the evening in question.  The
state also produced a transcript for the jury to read as they listened to the
recording.  The state redacted four passages from the recording and transcript
where the defendant talked about his previous prison experiences and the fact
that he was a registered sex offender.

            The redacted transcript and
audio included appellant’s age, weight, and then a discussion of the tattoos on
his shoulder.  It continued with the following statement by appellant:

            Sun and moon.  That’s just
stuff that’s basically like nights out, night stuff and day stuff.  But with my
priors it won’t really matter.  I mean she said I did it, so all’s they have to
is (unintelligible).

 

The conversation then turned to whether
or not appellant’s wife filed the charge.

            The audio recording was
admitted into evidence without objection.  The court allowed the defense
attorney to read the transcript.  After she had read it, the transcript was
distributed to the jury and the recording was played.

            As the tape was being
played, appellant’s attorney indicated, “I think we got a problem.”  The jury
was removed.  Appellant then objected to the sentence about “priors.”  Although
the record is unclear, both the appellant’s attorney and the judge assumed the
jury had read the sentence at the time the tape was stopped.  Appellant’s
attorney asked for a mistrial.  Although no one else had raised the idea of a
lesser remedy, appellant’s counsel specifically stated that the error could not
be cured with an instruction and the jurors couldn’t be questioned without
drawing more attention to the issue.

            The prosecutor pointed out
that no objection had been made when the tape was admitted into evidence.  However,
they offered to redact the sentence.  They also stated that any problem could
be cured by a limiting instruction.  Finally, they noted that the word
“priors,” in an answer about tattoos, wasn’t necessarily prejudicial to the
appellant.

            Appellant again stated that
nothing could be done to cure the error.  The trial court then overruled
appellant’s request for the mistrial and the trial resumed.

            A timely objection is
necessary to preserve an issue for review.  Tex.
R. App. P. 33.1(a); Young v. State, 137 S.W.3d 65, 69 (Tex. Crim.
App. 2004).  By not objecting, appellant has waived any error.

            Appellant acknowledges that
there was not a timely objection but argues that under the facts of this case
“perhaps” it was timely.  Appellant then argues the trial judge should have
either questioned the jurors or given a limiting instruction – both remedies
which appellant expressly asked the trial court not to do during the trial.

            The only adverse ruling
appellant obtained was the denial of a mistrial.  Even if we were to consider
the objection timely, appellant was still not entitled to a mistrial.

            Mistrials are drastic
remedies which should only be employed when lesser remedies, such as an
instruction to disregard or questioning of jurors, would be ineffective to cure
any problem.  Ocon v. State, 284 S.W.3d 880, 884-85 (Tex. Crim.
App. 2009).  When a defendant only requests a mistrial instead of lesser
remedies, the reviewing court should not reverse the trial court if the problem
could have been cured by less drastic remedies.  Id. at 885.  The denial
of a mistrial is reviewed on an abuse of discretion standard.  Id. at
884.

            It is important to note that
the complaint is directed at the single word “priors.”  Even assuming the jury
related “priors”[1]
to criminal matters, no details are provided.  The “priors” could be arrests or
convictions, felonies or misdemeanors, crimes of moral turpitude or not.  The
less specific extraneous information is, the easier it is to cure with an
instruction.

            Under these circumstances, a
prompt instruction to the jury to disregard would have been an effective way to
eliminate any prejudice.  Gamboa v. State, 296 S.W.3d 574, 581 (Tex.
Crim. App. 2009) (instruction to disregard sufficient to cure testimony that
the defendant had been seen “in a Crime Stoppers on an unrelated shooting that
occurred like the following weekend”).  Appellant’s attorney did not want such
an instruction because it would just highlight the issue for the jury.  The
trial court evidently agreed.  The trial court did not abuse its discretion in
denying the mistrial.

Jury Received
Document Not in Evidence

            In his final point of error,
appellant complains that the trial court improperly sent the transcript of the
custodial interrogation back to the jury room for consideration during their
deliberations.  During jury deliberations, the jury sent out a note asking for
the transcript.  Although the recording was admitted into evidence, the
transcript was not.  Over appellant’s objection, the trial court sent the transcript
back to the jury room to be used during their deliberations.

            The Court of Criminal
Appeals dealt with a similar complaint in Russell v. State, 155 S.W.3d
176 (Tex. Crim. App. 2005).  In Russell, the jury sent out a
request to hear a tape and read the transcript while listening.  Over Russell’s
objections, the trial court brought the jury back into the courtroom,
distributed the transcripts, and played the tape.  The jury then returned to
their room to continue their deliberations.  

            The Russell court
declined to rule on whether or not the procedure was error.  The court simply
noted that this was not a constitutional error, it didn’t affect appellant’s
substantial rights and, therefore, under Rule of Appellant Procedure 44.2(b),
the court should disregard it.  Id. at 179.  In short, “[The jury]
reviewed exactly what they reviewed during trial – no more and no less.”  Id.

            Just as in Russell,[2]
the jury in this case was given the same transcript they had already seen
during the trial.  No substantial right of the appellant was affected. 
Appellant’s final issue is overruled.

CONCLUSION

            Having overruled each issue
on appeal, the trial court’s judgment is affirmed.

 

KEN ANDERSON

District Judge

 

Before
Chief Justice Gray, 

Justice Scoggins and 

Judge Anderson[3]

Affirmed

Opinion
delivered and filed April 6, 2011

Do
not publish

[CRPM]









[1]
The State argues that the meaning
of “priors” is unclear.  “Priors” is used as a noun rather than an adjective;
neither the words “convictions” nor “arrests” follows it.  However, in an era
of 24-hour crime dramas on TV, coupled with the popularity of crime novels,
most jurors would likely conclude “priors” used in this context has to do with
prior involvement in the criminal justice system.  Indeed, Webster’s Unabridged
Dictionary lists “prior conviction” as one of the meanings of “prior” when used
as a noun.





[2] 
Transcripts as jury aids when
listening to an audio recording were first expressly authorized by case law by
the Fort Worth Court of Appeals in 1982.  Garrett v. State, 639 S.W.2d
18 (Tex. App.—Fort Worth 1982) aff’d, 658 S.W.2d 592 (Tex. Crim. App. 1983). 
The Garrett court, following the logic of federal cases, upheld the use
of transcripts where they would aid the jury with the following procedural
safeguards: 1) the side that did not prepare the transcript was given an
advance copy of the transcript and adequate time to review and contest it, 2)
it was not admitted into evidence and 3) the court gave a limiting
instruction.  Id. at 20.  The Court of Criminal Appeals subsequently
granted a petition for discretionary review and upheld the court of appeals
decision on narrow grounds.  Garrett v. State, 658 S.W.2d 592 (Tex.
Crim. App. 1983).  Although the Court of Criminal Appeals has not authorized
the procedure outlined by the court of appeals, the court of appeals opinion
has in fact been the procedure in widespread use around the state for the past
25 years.  E.g., Mayhue v. State, 969 S.W.2d 503, 506-507 (Tex.
App.—Austin 1998, no pet.); Garner v. State, 939 S.W.2d 802, 806-07
(Tex. App.—Fort Worth 1997, pet. ref’d); see Russell v. State, 155
S.W.3d 176 (Tex. Crim. App. 2005).  Exact wording of the limiting instruction
is up to the discretion of the trial court.  It should inform the jury that the
transcript is not evidence and that if they hear something on the tape that
differs from the transcript, they should rely on what they heard.  Garner,
939 S.W.2d at 806.  In our case, none of these procedural safeguards
were followed.  Appellant’s attorney was handed the transcript during the trial
at the time the state offered to play it in front of the jury.  There was no
limiting instruction of any kind given by the trial court.  While the
transcript was not technically admitted into evidence, it was sent back to the
jury room to be considered as they deliberated.  Had the procedural guidelines
been followed, the basis for appellant’s last two issues would have vanished. 
More importantly, the trial would have been fairer.  The three
procedural guidelines outlined above are the best practices for use of
transcripts and should be followed by trial courts.

 





[3]
 Ken Anderson, Judge of the 277th
District Court of Williamson County, sitting by assignment of the Chief Justice
of the Texas Supreme Court pursuant to Section 74.003(h) of the Government
Code.  See Tex. Gov’t Code Ann.
§ 74.003(h) (West 2005).








effectiveness. For example, in the habeas corpus proceeding in Ex parte Battle, the
defendant produced the affidavit of trial counsel establishing that counsel had given him improper
advice about his eligibility for probation. 817 S.W.2d at 83. Because Battle's plea was based on
the erroneous advice of counsel that he was parole-eligible,


 the Court found trial counsel
ineffective. Id. at 84.
          We do not have anything in the record to indicate the reasoning or strategy of trial counsel. 
Unlike Battle, we do not have the testimony of trial counsel admitting that he gave erroneous
advice. Id. at 83. Given the record before us, we cannot determine that Campos has met his
burden to prove that trial counsel's representation fell below an objective standard of
reasonableness and that this deficient performance prejudiced his defense. Id. at 84. We overrule
point two.
ADMONISHMENTS
          Campos' third point asserts that his plea was not voluntarily and knowingly made because
the court did not comply with the required naturalization admonishment. Tex. Code Crim. Proc.
Ann. art. 26.13 (Vernon 1989 & Supp. 1996). Article 26.13(a)(4) provides that, prior to
accepting a plea of guilty or nolo contendere, the court shall admonish the defendant of:
the fact that if the defendant is not a citizen of the United States of America, a plea of
guilty or nolo contendere for the offense charged may result in deportation, the exclusion
from admission to this country, or the denial of naturalization under federal law.
Id. art. 26.13(a)(4). 
          The court admonished Campos as follows:
          COURT:       Do you further understand that if you are not a citizen of the United States
of America that a plea of nolo contendere may result in deportation, the
exclusion of admission to this country, or the denial of citizenship under the
United States Constitution? Do you understand that?
 
          [CAMPOS]:   Yes.
Campos argues that the court's use of the language "denial of citizenship under the United States
Constitution" rather than use of the statutory language "denial of naturalization under federal law"
constitutes a failure to admonish. Morales v. State, 872 S.W.2d 753, 755 (Tex. Crim. App.
1994). 
          The complete failure to comply with the admonishment required under article 26.13(a)(4)
requires reversal. Id. However, article 23.13(c) provides that "substantial compliance" is
sufficient unless the defendant affirmatively shows that he was not aware of the consequences of
his plea and that he was misled or harmed by the court's admonishment. Tex. Code Crim. Proc.
Ann. art. 26.13(c); Morales, 872 S.W.2d at 754. 
          We believe that the court substantially complied with the statutory admonishment.


 Tex.
Code Crim. Proc. Ann. art. 26.13(c); Morales, 872 S.W.2d at 754. Thus, we find that a prima
facie showing was made that Campos' plea was knowingly and voluntarily made. See Morales,
872 S.W.2d at 754. Campos has not affirmatively shown that he was misled or harmed by the
court's substantially correct admonition. Tex. Code Crim. Proc. Ann. art. 26.13(c). We
overrule point three.
          Having reformed the judgment to delete the affirmative finding of use of a deadly weapon,
we affirm the judgment as reformed.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Reformed and affirmed
Opinion delivered and filed July 17, 1996
Publish