

NUMBER 13-13-00144-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHARLES DEVON WASSERMAN,                                             **Appellant,**

**v.**

THE STATE OF TEXAS,                                                   **Appellee.**

## On appeal from the 24th District Court
## of De Witt County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Perkes and Longoria**
**Memorandum Opinion by Justice Longoria**

By three issues, appellant Charles Devon Wasserman appeals his conviction for aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B), (e) (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

M.R., the mother of the child complainant, K.C., testified at trial that she met appellant in late March 2011.[1] K.C. was seventeen months old at the time. On March 25, 2011, she and K.C. moved in with appellant and his three year-old son. At the time, appellant lived in a small house located on his parent's property. M.R. testified that on one day, probably around March 30th, she heard K.C. crying, opened the door to the bathroom and found appellant showering with K.C. Appellant "was on one knee and he was – it appeared to – he was spreading [K.C.'s] butt cheeks." Appellant told her that he was checking on a cut K.C. sustained to his buttocks by sitting on a razor. On April 11th, M.R. took K.C. to the doctor for a regularly-scheduled health checkup. K.C. "wasn't too active" that day, but M.R. testified that K.C. did not exhibit any distress except for a case of diarrhea. However, the next day, April 12th, K.C. appeared "sluggish. He wasn't really active. He just seemed tired, like he wasn't feeling good." M.R., appellant, K.C. and appellant's son returned to appellant's house around 8:00 p.m. K.C. and appellant's son went to sleep around 9:00 p.m., while M.R. and appellant went to bed at approximately 10:30 p.m.

K.C.'s cries woke M.R. at approximately 7:00 a.m. the next morning. M.R. testified that she realized appellant was not in the bed and called out to appellant to ask why K.C. was crying. According to M.R., appellant replied that K.C. had vomited and appellant was cleaning him. Appellant brought K.C. to M.R. with a freshly changed diaper, even though M.R. testified that she usually changed his diapers. M.R. testified that K.C. held on to her "really tightly." M.R. fell back asleep but woke up again at 7:30 or 7:45 a.m. when

---

[1] We will refer to the mother (M.R.) and child (K.C.) by their initials to protect their privacy.

appellant told her that he was leaving for work. M.R. testified that at the time, K.C. "seemed like he was really, really, exhausted." After appellant left for work, M.R. went to appellant's parent's house around 9:00 a.m. to put a load of dirty laundry into the washing machine. She took appellant's son with her and left K.C. unattended on a bed. She spoke with appellant's mother and returned to appellant's house no more than a half hour later.[2] M.R. testified that she found K.C "on the floor" and described him as "staring" and "limp." M.R. called appellant, who drove them to the emergency room.

Shortly after they arrived at the emergency room, a CT scan of the child's abdomen revealed that K.C. suffered a rectal injury caused by penetration of his anus with a blunt object. Hospital staff questioned M.R. and appellant regarding whether K.C. had been abused. M.R. denied inflicting the injuries, but appellant, in M.R.'s words, "blew up," "made a big scene," and left the hospital and did not return. At this time, M.R. and K.C. had lived with appellant for eighteen days.

Doctor Patricia Tenner testified at trial that K.C. arrived at the emergency room in a state of "profound shock." K.C. was airlifted to the ICU at the Methodist Children's Hospital in San Antonio, Texas, where it took a medical team twelve hours to stabilize his condition. Due to an infection related to the rectal injury and resulting loss of consciousness, K.C. suffered permanent brain damage as well as injuries to his liver, lungs, and kidneys. The treatment included the insertion of two IV needles "into the bones of [K.C.'s] lower legs" because the doctors were unable to transfuse blood normally. This treatment later resulted in the removal of one of the muscles in K.C.'s lower leg.

---

[2] The exact time she was gone from the house was disputed at trial.

Examinations revealed that K.C. also exhibited various injuries such as a fractured wrist, a cut on his buttocks, a ruptured eardrum, and cigarette burns to his toes.

Dr. James Lukefahr, a pediatrician specializing in "child abuse pediatrics," testified at trial regarding K.C.'s condition:

> [T]he medical findings were that [K.C.] had a penetrating injury to the anus that extended quite a ways up into the abdominal cavity and that that penetration allowed for infection and toxins to then cause massive inflammation of [K.C.'s] entire intestinal tract and led to shock and his loss of consciousness.

Regarding the time frame when the injury occurred, Dr. Lukefahr testified that the incident occurred before appellant left for work at 7:45 a.m. on April 13th, (the day of the hospitalization), but likely happened after K.C. and appellant's son went to bed around 9:00 p.m. the evening before. Dr. Lukefahr testified that this timeframe was likely because even though the infection would take some time to develop, the rectal injury "would immediately cause very severe pain in the child and a lot of other really major symptoms, like difficulty walking, difficulty standing up straight, even," and there was no evidence that K.C. exhibited that sort of distress earlier on April 12th. Dr. Joel Dunlap, the pediatric radiologist at Cuero Community Hospital, testified regarding the timeline that "I wouldn't put [the injury] older than a day." Dr. Tenner, the Pediatric Critical Care Director for Methodist Children's Hospital, testified that K.C.'s symptoms were consistent with him sustaining the injury the night of the 12th, but inconsistent with it happening in the time after appellant went to work on the 13th.

Dr. Lukefahr further testified that, in his opinion, this injury was not caused by falling off the bed, diarrhea or a rash. Dr. Lukefahr indicated that the penetration was likely with a razor and "was definitely more likely to be a deliberate injury." In his opinion, "it would

4

be an exceptionally rare circumstance for an injury like this to happen accidentally." Regarding the burns on K.C.'s toes, Dr. Lukefahr stated that they were cigarette burns and not blisters caused by his shoes as M.R. believed. Dr. Lukefahr specifically testified that the fracture of K.C.'s left wrist, the burns on his toes, the cut on his buttocks, the ruptured eardrum, and the "linear cuts" around the anus were less than two weeks old at the time K.C. arrived at the hospital.

Officer Carl Bowen testified that he recovered a razor from a "shelf unit" in the bathroom of appellant's house next to a toothbrush. Officer Bowen testified that he observed a stain on the blunt end of the razor that appeared to be blood. He also recovered a t-shirt and towel from a laundry hamper set between the sink and the wall that appeared to be stained with blood and another unidentified substance. A forensic scientist from the Department of Public Safety Crime Laboratory in Corpus Christi, Texas testified that the stains on the towel, the t-shirt and the razor tested positive for K.C.'s DNA. M.R. stated during her testimony that all three items belonged to appellant, and that she did not use either the t-shirt or the towel to clean up K.C.'s blood. She also denied inflicting any of K.C.'s injuries.

The jury returned a verdict of guilty, and the trial court assessed punishment at ninety-nine years' imprisonment in the Texas Department of Criminal Justice— Institutional Division. This appeal followed.

## II. Sufficiency of the Evidence

By his first issue, appellant argues that the evidence is legally insufficient because it equally implicates M.R. as the person who committed the offense.

### A. Standard of Review and Applicable Law

5

When a defendant challenges the sufficiency of the evidence, this Court "must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1976)). This Court may not substitute its judgment for that of the jury by reevaluating the weight or credibility of the evidence, but must defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the same standard to both circumstantial and direct evidence. *Id.* Circumstantial evidence may be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish a defendant's guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The facts need not all point directly and independently to the defendant's guilt, but the cumulative effect of all incriminating facts must be sufficient to support the conviction. *Id.*

We measure the sufficiency of the evidence supporting a conviction by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Yzaguirre v. State*, 394 S.W.3d 526, 528 (Tex. Crim. App. 2013) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A person commits the offense of aggravated sexual assault of a child if the person: (1) intentionally or knowingly (2) causes the penetration of the anus or the sexual organ of a child under the age of fourteen, (3) by any means. *See Torres v. State*, 424 S.W.3d 245, 251 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (citing TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i),(iii),

6

(a)(2)(B)).  The indictment in this case alleged that appellant, "between April 5, 2011 and April 13, 2011, intentionally and knowingly sexually assaulted K.C. by causing an object unknown to the Grand Jury to penetrate the anus of K.C., a child younger than seventeen years of age, and . . . was then younger than . . . six years of age."

### B.  Analysis

Appellant argues that the evidence is legally insufficient because it does not establish his identity as the perpetrator of the offense, but equally implicates M.R.[3]  We disagree.

The jury had the following evidence pointing to appellant's guilt:  (1) testimony from a medical expert in "child abuse pediatrics" that the injury likely occurred sometime the night before the hospitalization plus similar testimony from two other doctors; (2) M.R.'s testimony that appellant was already awake when K.C.'s cries woke her at approximately 7:30 a.m. on the day of the hospitalization; (3) Officer Bowen's testimony that he recovered the razor from the shelf and the blood-stained t-shirt and towel from a laundry hamper in the bathroom; (4) M.R.'s testimony that the razor, t-shirt, and towel belonged to appellant; and (5) the medical testimony that K.C. suffered all of his injuries within the short period of time that he lived with appellant and there was no evidence he suffered any injuries when he was solely under the care of M.R.

Appellant argues that this evidence is insufficient because much of it relies on M.R.'s testimony, and no reasonable jury could credit her testimony.[4]  Appellant asserts

---

[3] Appellant does not challenge the sufficiency of the evidence supporting any other element of the offense.

[4] Appellant also mentions that Amy Ruiz, who lives across the street from appellant, testified that she heard a "horrible" cry from a baby on the morning of April 12th after she observed appellant leaving for work.  Ruiz testified that she thought the cry came from the Wasserman residence, but admitted that she just thought the cry came from that "general area."

that a reasonable jury could not believe M.R.'s version of events because she admitted to regularly using Xanax and marijuana, including on the night before the hospitalization, her statements to the police were "progressive" because she added new details each time, and she was indisputably present at the time when the injury most likely occurred. However, the jury is the "sole judge" of the credibility of witnesses. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). The jury, acting as factfinder, is free to accept or reject any or all parts of the witnesses' testimony. *Coe v. State*, No. 14-10-00929-CR, __ S.W.3d __, 2012 WL 1899179, at *12 (Tex. App.—Houston [14th Dist.] May 24, 2012, pet. ref'd) (citing *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998)). While we agree that there are some internal inconsistencies in M.R.'s testimony, the jury was free to credit at least the portions of her testimony that she did not use the t-shirt and towel to clean up K.C.'s blood at any time and that appellant was already awake when she woke up on the day of the hospitalization. The jury also had before it medical testimony regarding a likely timeframe for when K.C. suffered the injury that partially overlapped with the time in which M.R. testified that appellant was awake. The jury could also consider that K.C. suffered all of his injuries in the brief period of time that he lived with appellant. *See Coe*, 2012 WL 1899179, at *14 (holding that "the fact that once appellant became romantically involved with [the child complainant's] mother, [the child complainant's] health began to deteriorate" was probative circumstantial evidence of the defendant's guilt).

Viewing the foregoing circumstantial evidence in the light most favorable to the jury's verdict, and deferring to the jury's evident decision to credit M.R.'s testimony, we conclude that there is legally sufficient evidence for the jury to infer that appellant

committed the charged offense. *See Isassi,* 330 S.W.3d at 638; *Hooper,* 214 S.W.3d at 13; *see also Coe,* 2012 WL 1899179, at \*14. We overrule appellant's first issue.

### III. Violation of "The Rule"

By his second issue, appellant argues the trial court committed reversible error by allowing police sergeant Carl Bowen to remain in the courtroom during appellant's trial. Texas Rule of Evidence 614, also known as "The Rule," states that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." TEX. R. EVID. 614. Appellant argues that the State failed to show that Officer Bowen was properly excluded from the Rule. *See id.* The State responds that appellant waived error because appellant's counsel did not object when the trial court excused Officer Bowen from the Rule when the witnesses were sworn or when the State called Officer Bowen as a witness.

"In order to preserve an issue for appellate review, a timely and specific objection is required. A specific objection is necessary to inform the trial judge of the issue and basis of the objection, and to allow the judge a chance to rule on the issue at hand." *Layton v. State,* 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009) (internal citations omitted); *see* TEX. R. APP. P. 33.1. To preserve error in the admission of evidence, a party must continue to object each time the evidence is offered.[5] *Martinez v. State,* 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). In this case, even assuming that appellant preserved error when the judge excused Officer Bowne from the Rule, he did not object

---

[5] There are two exceptions to this rule, but neither is relevant here. *See Martinez v. State,* 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

9

when the State called him to testify. We conclude that appellant did not preserve error for our review.[6] *See id.* We overrule appellant's second issue

## IV. Improper Jury Argument

By his third issue, appellant argues that the State prejudiced his case by introducing harmful new facts into the trial in the State's closing argument.

### A. Applicable Law

The Texas Court of Criminal Appeals has identified four general areas of approved closing argument: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to the arguments of opposing counsel; and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Argument outside of these general areas is not reversible error unless, in light of the record as a whole, the argument is "extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Id.* We will not reverse unless the remarks were part of a "willful and calculated" effort by the State to deprive appellant of a fair trial. *Id.*

### B. Analysis

The State's closing argument included the following statements:

> Well, what about Lortabs, methadone and steroids if we're going to talk about drugs? Frankly, I don't think it's drugs. I think it's just cruel viciousness. But the Lortabs, the methadone and the steroids don't help. Now, we know what steroids do. You didn't hear one word of evidence that Xanax causes anybody to act like this. And it doesn't. Xanax brings you down. Xanax chills you out. It makes you less vigilant, it makes you less

---

[6] We note that "the State's designating a witness as a 'case agent' does not make a witness one whom the court may not exclude form the courtroom under Rule 614." *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005). The Texas Court of Criminal Appeals "deliberately chose to make [its] rule different when [it] adopted Rule 614(2)." *Id.* In Texas, "[n]either the State nor a defendant who is a natural person may take away the court's authority to exclude one of the witnesses by simply designating the witness." *Id.*

alert and it gives multiple opportunity to an evil person to do evil things. But it doesn't cause you to be evil. It doesn't cause you to rape your children.

Appellant argues that the State harmed appellant's case by injecting facts not in evidence regarding the effect that consuming "Lortabs, methadone and steroids" had on appellant and the effect that consuming marijuana and Xanax had on M.R. Appellant asserts that the State implied that the different substances appellant and M.R. allegedly used made him a more likely candidate to commit the offense and her a less likely one, but there was no medical evidence to that effect. The State responds that every fact it referenced in this portion of its argument was already in evidence.

Assuming without deciding that appellant properly preserved error, we agree that the State's argument did not inject new facts harmful to appellant into the trial. The prosecution's statements on the effect of Xanax on M.R. was a reference to M.R.'s testimony that Xanax "calms [her] down" and makes her "less aware" of what is going on around her and that she continues to feel the sedative effects the morning after taking it. The jury also heard testimony from M.R. that appellant did not regularly take Xanax or marijuana, (except for using marijuana on one occasion), but that he consumed "Lortabs, methadone, [and] steroids." Regarding appellant's argument that the State implied that taking those drugs made him more likely to commit the offense, the prosecutor clearly told the jury that the State believed the causal factor in appellant's offense was the alleged "viciousness" in appellant's character and not the drugs M.R. testified that appellant allegedly consumed.[7]

---

[7] We also note that the prosecutor did not allege or imply that appellant actually consumed any of these substances during or around the time of the alleged abuse.

11

In sum, we conclude from the foregoing that the State did not inject new facts harmful to appellant by this portion of its closing argument to the jury. *See Wesbrook*, 29 S.W.3d at 115. We overrule appellant's third issue.

**V. CONCLUSION**

We affirm the judgment of the trial court.


NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of August, 2014.